UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

BERKELEY S. SCOTT,                    :

                    Plaintiff,        :    10 Civ. 5005 (HBP)

     -against-                        :    OPINION
                                           AND ORDER
HARRIS INTERACTIVE, INC.,             :

                    Defendant.        :

----------------------------------X

          PITMAN, United States Magistrate Judge:


I.   Introduction


          This is an action for breach of contract and violation
of Article 6 of the New York State Labor Law, N.Y. Labor L.
§§ 190, et seq., arising out of plaintiff Berkeley S. Scott's
employment with defendant Harris Interactive, Inc. ("Harris
Interactive") from approximately late May 2009 through mid-March
2010.  Harris Interactive has asserted a counterclaim for breach
of contract against plaintiff.  The parties have consented to my
exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

          By notice of motion dated April 15, 2011 (Docket Item
13), Harris Interactive moves for summary judgment (1) dismissing
plaintiff's breach of contract and Labor Law claims and (2)
granting its breach of contract counterclaim.  Plaintiff opposes

Harris Interactive's motion and cross-moves for summary judgment (1) granting his breach of contract and Labor Law claims and (2) dismissing Harris Interactive's breach of contract counterclaim (Docket Item 22).[1]

For the reasons set forth below, Harris Interactive's motion for summary judgment is granted in its entirety and plaintiff's cross-motion for summary judgment is denied in its entirety.

---

[1]Harris Interactive argues that plaintiff's cross-motion for summary judgment is not timely, and, thus, should not be considered (see Defendant's Response in Opposition to Plaintiff's Cross-Motion for Summary Judgment, and Reply to Plaintiff's Papers in Opposition to Defendant's Motion for Summary Judgment, dated May 31, 2011 ("Def.'s Reply Mem."), (Docket Item 26), 13-15). Although I did order that dispositive motions be served no later than April 15, 2011 (Docket Item 10), and plaintiff's cross-motion for summary judgment was filed on May 10, 2011 (Docket Item 22), Harris Interactive does not contend that it suffered any prejudice as a result of the late submission. Moreover, when one party moves for summary judgment, the Court can grant summary judgment in favor of any party who is entitled to judgment as a matter of law. See F.R.C.P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."). Thus, notwithstanding plaintiff's tardiness, I shall consider his cross-motion.

II.  <u>Facts</u>

    A.  <u>The Parties' Allegations</u>

        Plaintiff's complaint alleges the following facts.  On April 27, 2009, Harris Interactive offered plaintiff, in writing, the position of "Senior Vice President, Global Accounts & Business Development" (Complaint, dated June 28, 2010 ("Compl."), (Docket Item 1), ¶ 8).  The letter making the offer "set [] forth the terms, conditions, and benefits of [plaintiff's] employment" which included, among other things, the following:  (1) a salary of $220,000.00 per year and (2) a provision entitling plaintiff to six-months of severance benefits and continued healthcare benefits (or their cash value equivalent) in the event that he was terminated without cause (<u>see</u> Compl. ¶¶ 9-13).  The letter also provided that plaintiff would be an at-will employee of Harris Interactive, stating that "the employment relationship between [plaintiff] and [Harris Interactive] may be terminated at any time, by either [plaintiff] or Harris Interactive, for any reason not expressly prohibited by law" (Ex. B at DEF000002 to Defendant's Statement of Material Facts Not in Dispute, dated Apr. 15, 2011 ("Def.'s St. of Mat. Facts"), (Docket Item 14)).  The letter was signed by Kimberly Till, the President and Chief Executive Officer of Harris Interactive (Compl. ¶ 9).  Plaintiff

accepted the offer by signing the letter on or about May 2, 2009, and he commenced work on or about May 20, 2009 (Compl. ¶ 15).

As Senior Vice-President of Global Accounts and Business Development at Harris Interactive, plaintiff "was responsible for creating and implementing new programs and business models to increase Harris Interactive's domestic and global business" (Compl. ¶ 16). In this position, plaintiff "recruited [and supervised] sales teams for six industry sectors covered by Harris Interactive" and "created a Global Account Management (GAM) Program, designed to coordinate Harris Interactive's larger accounts worldwide" (Compl. ¶¶ 17-18). However, plaintiff alleges that in or about November 2009, Harris Interactive began to unilaterally diminish his duties and "assigned [him] the additional duties of an individual contributor/seller, a position for which [he had] not [been] hired" (Compl. ¶¶ 20-21). Notwithstanding this, plaintiff alleges that he "retained his title, senior leadership responsibilities, global responsibilities, and all compensation terms set forth in his [April 27, 2009 offer letter]" (Compl. ¶ 25).

In approximately mid-January 2010, plaintiff alleges that he discovered Harris Interactive had postponed the formal launch of the six global accounts and sales teams that he had structured (Compl. ¶ 26). Additionally, at around the same time,

plaintiff states that he received an e-mail from Frank Forkin, the former President of Client Services in North America at Harris Interactive, "in which Forkin acknowledged that [plaintiff's] 'role has changed' from what he was hired to do" (Compl. ¶ 27).  Then, in late January 2010, plaintiff alleges that he was informed by Till that another Harris Interactive employee would be taking over the launch of the global accounts (Compl. ¶ 28).

On or about February 19, 2010, plaintiff states that he received an e-mail from Till informing him that a time was being scheduled to discuss his changed job responsibilities as well as "appropriate compensation" (Compl. ¶ 29).  This conversation took place on or about March 4, 2010; plaintiff alleges that he was informed that he had been "demoted to the title of Senior Vice President [of] Account Management" and that his adjusted salary would be $150,000.00 per year (Compl. ¶¶ 30-32).  The reduced salary rate would become effective on March 15, 2010 (Compl. ¶ 35).  Plaintiff ceased working for Harris Interactive on March 16, 2010 (see Compl. ¶¶ 37-38).

Plaintiff states that he performed his contractual obligations under the agreement with Harris Interactive and that he did not agree to the company's "unilateral changes" to his employment (Compl. ¶ 34).  Plaintiff also states that "Harris Interactive's unilateral removal of [his] job duties, change in

5

his title, and $70,000 reduction in his salary were intolerable changes to [his] working conditions such that Harris Interactive constructively discharged [him] from his employment" effective March 16, 2010 (Compl. ¶¶ 37-38).

Based on the above facts, plaintiff presently seeks: (1) six months of severance benefits, (2) six months of continued healthcare benefits, or their cash value equivalent, (3) the unpaid portion of his salary for his final two days of work at the "proper contractual rate" (i.e., at $220,000.00 instead of $150,000.00) and (4) liquidated damages, attorneys' fees, costs, disbursements and prejudgment interest (Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, dated May 10, 2011 ("Pl.'s Mem."), (Docket Item 24), 2; see also Compl. ¶¶ 54, 64).[2]

In its Answer to the Complaint (Answer, dated July 27, 2010 ("Answer"), (Docket Item 5)), Harris Interactive has asserted a counterclaim for breach of contract.  In connection with Harris Interactive's offer letter dated April 27, 2009, plaintiff received a $15,000.00 signing bonus (Answer ¶¶ 43-44).  The

---

[2]Plaintiff has withdrawn his claims for (1) payment of a "minimum guaranteed bonus" for the fiscal year 2010 and (2) unpaid vacation time (see Pl.'s Mem. at 2).

letter provided, however, that in the event plaintiff either voluntarily terminated his employment or was terminated for cause prior to the first anniversary date of his employment, the signing bonus would have to be repaid to Harris Interactive (Answer ¶ 43).  Based on the facts set forth above, Harris Interactive alleges that plaintiff voluntarily terminated his employment prior to the first anniversary date of his employment, and, thus, is obliged to reply his $15,000.00 signing bonus (Answer ¶¶ 45-49).

     B.    Facts the Parties' Claim
            <u>Are Established by Discovery</u>

Both parties have submitted Local Civil Rule 56.1 statements.  I set forth here the material facts that the parties contend have been established either through discovery or by affidavits submitted in connection with the pending motions, noting the particular disputes that exist between the parties.

By letter dated April 27, 2009, Harris Interactive offered plaintiff employment with the company subject to the express provision that plaintiff would be an "at-will" employee[3]

_____

[3]Plaintiff contends that the April 27, 2009 letter was an employment contract which memorialized a series of discussions and negotiations that had already taken place between plaintiff and Till (<u>see</u> Plaintiff's Response to Defendant's Rule 56.1

(continued...)

(Def.'s St. of Mat. Facts ¶¶ 7, 10, citing Exs. A and B to Def.'s
St. of Mat. Facts and Affidavit of Kimberly Till in Support of
Motion for Summary Judgment, sworn to on Apr. 15, 2011 ("Till
Aff."), (Docket Item 15), ¶¶ 9-11).  Plaintiff's job duties and
responsibilities were not set forth in this letter (Def.'s St. of
Mat. Facts ¶ 8, citing Ex. B to Def.'s St. of Mat. Facts).

However, there is no dispute that:

> [P]laintiff was initially tasked with, inter alia, all
> of the following:  (1) recruit a business development
> team from across a number of different sales sectors
> that would aggressively grow North American client
> lists and sales; (2) form a series of teams to create
> and execute global strategies for driving increased
> business from up to six of Harris' clients with global
> presence and needs (typically, client accounts were
> managed locally by geographic region); and (3) carry
> out individual "contributions" or sales (i.e., person-
> ally book sales for Harris with his own set of cli-
> ents).

---

[3](...continued)
Statement of Undisputed Material Facts and Plaintiff's Rule 56.1
Statement of Additional Undisputed Material Facts, dated May 10,
2011 ("Pl.'s St. of Mat. Facts"), (Docket Item 25), ¶¶ 74-87).
Harris Interactive, instead, contends that the letter was an
"offer letter" in which the company "reserved the right via the
at-will clause . . . to make changes to th[e] terms and
conditions [set forth therein]" (see Defendant's Response to
Plaintiff's Material Facts Submitted in Support of Plaintiff's
Cross-Motion for Summary Judgment, dated May 31, 2011 ("Def.'s
Reply to Pl.'s St. of Mat. Facts), (Docket Item 27), ¶¶ 74-87).
Resolution of this issue is not material to the outcome of the
pending motions, however, because even if the letter is construed
as an offer letter and not as an employment contract at the time
that it was sent to plaintiff, plaintiff nevertheless ultimately
signed and accepted the terms contained therein.

(Def.'s St. of Mat. Facts ¶ 12, <u>citing</u> Till Aff. ¶¶ 13-15, Affidavit of Marc H. Levin in Support of Motion for Summary Judgment, sworn to on Apr. 15, 2011 ("Levin Aff."), (Docket Item 16), ¶¶ 2-4 <u>and</u> Affidavit of Frank Forkin, sworn to on Mar. 24, 2011 ("Forkin Aff."), (Docket Item 18), ¶¶ 3-5).  Plaintiff reported to Forkin, although Till and other individuals at Harris Interactive also tracked plaintiff's progress (Def.'s St. of Mat. Facts ¶ 13, <u>citing</u> Till Aff. ¶¶ 16-23 <u>and</u> Forkin Aff. ¶ 3).

Harris Interactive contends, however, that plaintiff's performance in his leadership and managerial roles at Harris Interactive "lagged from early on in his tenure . . . . " (Def.'s St. of Mat. Facts ¶ 14, <u>citing</u> Till Aff. ¶¶ 16-21 <u>and</u> Forkin Aff. ¶¶ 6-7, 13).  For example, Harris Interactive states that "[p]laintiff did not lay the administrative groundwork for the Business Development Team in a timely manner, failing to assign accounts to individuals and groups or develop sales targets until well after he had started with Harris"[4] (Def.'s St. of Mat. Facts

---

[4]Plaintiff contends that Harris Interactive's statements concerning his job performance are not material facts; however, he also states that:  "[A]lthough plaintiff commenced work at Harris [Interactive] in May 2009, [Harris Interactive] did not allocate any resources for plaintiff to create a Business Development Team until after Harris [] [Interactive's] fiscal year ended on June 30, 2009" (Pl.'s St. of Mat. Facts ¶ 15, <u>citing</u> Ex. 2 at 109 to Affirmation of Herbert Eisenberg, dated May 10, 2011 ("Eisenberg Affirm."), (Docket Item 23)).

¶ 15, <u>citing</u> Forkin Aff. ¶¶ 6-7).  Additionally, several team members complained that plaintiff "did not appear to be very active in the Business Development Team's organization and direction"[5] (Def.'s St. of Mat. Facts ¶ 18, <u>citing</u> Forkin Aff. ¶ 6).

With respect to "the formation of the six Global Account teams," Harris Interactive states that one of plaintiff's superiors "was unable to recall any actions at all taken by [p]laintiff with respect to this aspect of his duties"[6] (Def.'s St. of Mat. Facts ¶ 20, <u>citing</u> Till Aff. ¶¶ 21-22, Forkin Aff. ¶ 6 <u>and</u> Affidavit of George Terhanian, sworn to on Mar. 28, 2011 ("Terhanian Aff."), (Docket Item 19), ¶¶ 10-11).  Further, Harris Interactive states that any effort plaintiff made in this regard occurred approximately six months into his employment and that the actual launch of the Global Account Management Program did not take place until responsibility for the program had been given to another Harris Interactive employee[7] (Def.'s St. of Mat.

_____

[5]Plaintiff contends that the putative complaints by team members are not material facts (Pl.'s St. of Mat. Facts ¶ 18).

[6]Plaintiff contends that what plaintiff's superior "could or could not recall" is not a material fact (Pl.'s St. of Mat. Facts ¶ 20).

[7]Plaintiff states that any "[d]elays in setting up the global account program were repeatedly directed by Till herself" (Pl.'s St. of Mat. Facts ¶¶ 21-23, <u>citing</u> Ex. 2 at 94, 128, Ex. 3
(continued...)

Facts ¶¶ 21-23, <u>citing</u> Ex. E to Def.'s St. of Mat. Facts <u>and</u> Till Aff. ¶ 22).

Finally, with respect to plaintiff's initial job performance, Harris Interactive states that "[p]laintiff's inability to handle his leadership abilities was confirmed [by] the performance results of his Business Development Team"[8] (Def.'s St. of Mat. Facts ¶ 26, <u>citing</u> Till Aff. ¶¶ 23-26 <u>and</u> Forkin Aff. ¶ 9).  Specifically, in approximately mid-January 2010, Till and others reviewed whether the Business Development Team's performance met established sales goals and discovered that plaintiff's "method of computing his team's performance was wildly erroneous" and that the stated sales goals had not been

_____

[7](...continued)
at 83 <u>and</u> Ex. 5 at DEF001045 to Eisenberg Aff.).

   [8]Plaintiff contends that the characterization of his ability to handle his leadership abilities and the review of the Business Development Team's performance are not material facts (Pl.'s St. of Mat. Facts ¶ 26).

met[9] (Def.'s St. of Mat. Facts ¶¶ 27-29, citing Ex. F to Def.'s St. of Mat. Facts and Till Aff. ¶¶ 24-27).

Because of the foregoing, Harris Interactive began to reduce plaintiff's job responsibilities in late 2009, and by mid-January 2010, plaintiff was not performing the job responsibilities for which he had originally been hired (Def.'s St. of Mat. Facts ¶¶ 32-33, citing Exs. G, H, I to Def.'s St. of Mat. Facts, Forkin Aff. ¶¶ 12, 15 and Till Aff. ¶ 22).  Harris Interactive states that comments made by Forkin to plaintiff concerning the changes in his job responsibilities "seemed to [Forkin] to be well-received"[10] and that plaintiff did not object to the changes in his responsibilities[11] (Def.'s St. of Mat. Facts ¶¶ 31-33,

---

[9]Plaintiff states that he "appropriately calculated sales figures for the Business Development team based on total sales the [t]eam achieved per account whereas defendant limited its calculations to commissionable sales" (Pl.'s St. of Mat. Facts ¶ 28, citing Ex. 2 at 70-71, 77-78, 80-81 to Eisenberg Affirm.). Plaintiff also contends that review of the Business Development Team's performance, as well as Harris Interactive's statement that his method of computing his team's performance was "wildly erroneous," are not material facts (Pl.'s St. of Mat. Facts ¶ 29).

[10]Plaintiff disputes that the changes in his job responsibilities were well-received by him, stating that "[a]t the time of the conversation [between plaintiff and Forkin, plaintiff] expressed [only] that he was a 'team player' and wanted to cooperate with his supervisor and Till to do what was best for the [c]ompany" (Pl.'s St. of Mat. Facts ¶ 31, citing Ex. 2 at 64-65, 119-21, 170-71, 174-75, 179-80 to Eisenberg Affirm.).

[11]Plaintiff disputes that he never objected to the changes
(continued...)

12

<u>citing</u> Exs. G, H, I to Def.'s St. of Mat. Facts, Forkin Aff.
¶¶ 12, 15 <u>and</u> Till Aff. ¶ 22).

     As a result of the changes to plaintiff's job responsi-
bilities, Harris Interactive states that it determined plain-
tiff's salary "needed to be reduced and his other compensation
restructured" because plaintiff was performing an individual
contributor/seller role as opposed to a management-level leader-
ship role (<u>see</u> Def.'s St. of Mat. Facts ¶¶ 34-35, <u>citing</u> Till
Aff. ¶¶ 33-36, Levin. Aff. ¶ 4, Forkin Aff. ¶ 16 <u>and</u> Terhanian
Aff. ¶¶ 16-17).  Plaintiff, Forkin, Till and Marc Levin (Harris
Interactive's Executive Vice-President, General Counsel and
Corporate Secretary) discussed these changes with plaintiff on or
about March 4, 2010 during a conference call (Def.'s St. of Mat.
Facts ¶ 42, <u>citing</u> Ex. A to Def.'s St. of Mat. Facts <u>and</u> Levin
Aff. ¶ 4).  In pertinent part, plaintiff was informed during this
call that (1) his title would be changed to reflect his new role
at the company and (2) his salary would be reduced to $150,000.00
per year effective March 15, 2010 (Def.'s St. of Mat. Facts ¶ 43,
<u>citing</u> Exs. L and M to Def.'s St. of Mat. Facts <u>and</u> Till Aff.

---

[11](...continued)
in his responsibilities, again stating that he only "expressed
that he was a 'team player' and wanted to cooperate with his
supervisor and Till to do what was best for the [c]ompany" (Pl.'s
St. of Mat. Facts ¶ 32, <u>citing</u> Ex. 2 at 64-65, 119-21, 170-71,
174-75, 179-80 to Eisenberg Affirm.).

¶¶ 37-38).  Plaintiff was told to consider the changes and "to
let the conference call participants know if he was uncomfortable
with [them], and another one could be discussed"[12] (Def.'s St. of
Mat. Facts ¶ 47, <u>citing</u> Ex. L to Def.'s St. of Mat. Facts <u>and</u>
Till Aff. ¶ 39).  Shortly after the conference call, Levin sent
plaintiff an email summarizing the changes being made to his
compensation (Def.'s St. of Mat. Facts ¶ 48, <u>citing</u> Ex. M at 8-9
to Def.'s St. of Mat. Facts <u>and</u> Levin Aff. ¶ 6).

On March 8, 2010, plaintiff sent Levin an e-mail,
stating that he was "'not able to accept'" the revised terms and
conditions of his employment with Harris Interactive and that he
was requesting his severance pay (Def.'s St. of Mat. Facts ¶ 50,
<u>citing</u> Ex. M at 7-8 to Def.'s St. of Mat. Facts <u>and</u> Levin Aff.
¶ 7).  Levin responded to plaintiff that the severance provision
in his employment agreement did not apply because he was not
being terminated by Harris Interactive[13] (Def.'s St. of Mat.

---

[12]Harris Interactive states that plaintiff did not suggest
another role with the company that he could perform (<u>see</u> Def.'s
St. of Mat. Facts ¶ 47, <u>citing</u> Ex. L to Def.'s St. of Mat. Facts
<u>and</u> Till Aff. ¶ 39).  Plaintiff states that he suggested a high-
value sales role in an e-mail to Till the same date as the
conference call and that he had suggested to Forkin in early
November 2009 that he take over Harris Interactive's business in
Canada (Pl.'s St. of Mat. Facts ¶ 47, <u>citing</u> Ex. 2 at 119-20,
226-27 to Eisenberg Affirm.).

[13]Plaintiff contends that "Levin's statement that
[plaintiff] 'was not being terminated' is one of the legal
(continued...)

14

Facts ¶ 50, <u>citing</u> Ex. M at 6-7 to Def.'s St. of Mat. Facts <u>and</u>
Levin Aff. ¶ 7).

     Plaintiff e-mailed Levin again on March 10, 2010 and
stated that he believed Harris Interactive owed him severance pay
and that the company was in breach of contract, though he also
asked for "'clarity'" about his responsibilities and reporting
going forward[14] (Def.'s St. of Mat. Facts ¶ 51, <u>citing</u> Ex. M at
5-6 to Def.'s St. of Material Facts <u>and</u> Levin Aff. ¶ 8).  In
response, Levin e-mailed plaintiff with a description of his job
responsibilities as an individual contributor/seller and again
explained to plaintiff that he was not entitled to severance
payments because Harris Interactive had not terminated him[15]

---

[13](...continued)
questions at issue in this case" (Pl.'s St. of Mat. Facts ¶ 50).

   [14]Plaintiff also stated in this e-mail that:  "I have no
intention of resigning my position though as I understand it, my
position no longer exists.  By substantially diminishing my
salary and totally altering my position, Harris [Interactive] has
not acted in good faith and has breached our agreement" (Pl.'s
St. of Mat. Facts ¶ 137, <u>citing</u> Ex. 5 at DEF000160 to Eisenberg
Affirm.).

   [15]Plaintiff again contends that Levin's statement that
plaintiff "'was not entitled to severance pay because he was not
being terminated'" is one of the legal questions at issue in this
case" (Pl.'s St. of Mat. Facts ¶ 52).  Plaintiff also states
that, in this e-mail, Levin "threatened [plaintiff] that he would
be disciplined 'up to and including termination of [his]
employment for cause' if he failed to accept [Harris
Interactive's] proposed changes to the terms and conditions of
his employment" (Pl.'s St. of Mat. Facts ¶ 138, <u>citing</u> Ex. 5 at
(continued...)

(Def.'s St. of Mat. Facts ¶ 52, <u>citing</u> Ex. A at 84-85, 212-13 and Ex. M at 3-4 to Def.'s St. of Mat. Facts <u>and</u> Levin Aff. ¶ 9). Levin also asked plaintiff to confirm whether he wanted to continue working at Harris Interactive by March 12, 2010 (Def.'s St. of Mat. Facts ¶ 52, <u>citing</u> Ex. A at 84-85, 212-13 and Ex. M at 3-4 to Def.'s St. of Mat. Facts <u>and</u> Levin Aff. ¶ 9).

On March 12, 2010, plaintiff e-mailed Levin and again "demand[ed] . . . severance [pay] and [asserted] a complaint that he was being subjected to conditions that no other Harris [Inter-active] employee was subjected to" (Def.'s St. of Mat. Facts ¶ 55, <u>citing</u> Ex. M at 2-3 to Def.'s St. of Mat. Facts).  Levin responded to plaintiff's e-mail shortly thereafter, again asking plaintiff to confirm whether he wanted to continue working at Harris Interactive by March 15, 2010[16] (Def.'s St. of Mat. Facts

---

[15](...continued)
DEF000158 to Eisenberg Affirm.).  Harris Interactive disputes plaintiff's characterization of Levin's statement as a threat, and further, states that "the basis for the termination for cause referenced in [that] e-mail would have been [p]laintiff's refusal to perform the job duties that he had been instructed to carry out by Levin and Till, not his failure to accede to changes Harris [Interactive] had elected to make to the terms and conditions of his employment" (Def.'s Reply to Pl.'s St. of Mat. Facts ¶ 138, <u>citing</u> Def.'s St. of Mat. Facts ¶¶ 52, 55, Levin Aff. ¶¶ 7-13 <u>and</u> Ex. M to Def.'s St. of Mat. Facts).

[16]Plaintiff also states that, in this e-mail, Levin stated that plaintiff's failure to confirm his willingness to continue his employment at Harris Interactive would "'be considered insubordination and [the company would] have no choice but to
(continued...)

¶ 55, <u>citing</u> Ex. M at 1-2 to Def.'s St. of Mat. Facts <u>and</u> Levin Aff. ¶¶ 10-11).

On March 15, 2010, plaintiff responded to Levin's e-mail stating that he had provided Till with an activity report the previous Friday and that "so long as I remain employed by Harris [Interactive], I shall perform the duties assigned"[17] (Def.'s St. of Mat. Facts ¶ 57, <u>citing</u> Ex. M to Def.'s St. of Mat. Facts <u>and</u> Levin Aff. ¶ 13).  Harris Interactive then received a letter from plaintiff's counsel dated March 16, 2010, which (1) stated that plaintiff's counsel represented him with respect to his breach of contract/constructive discharge claim and (2) requested information concerning how plaintiff could return a company laptop to Harris Interactive (Def.'s St. of Mat. Facts ¶ 58, <u>citing</u> Ex. P to Def.'s St. of Mat. Facts <u>and</u> Levin Aff. ¶¶ 14-15).

---

[16](...continued)
terminate [his] employment for cause'" (Pl.'s St. of Mat. Facts ¶ 140, <u>citing</u> Ex. 5 at DEF000157 to Eisenberg Affirm.).

[17]Plaintiff also stated in this e-mail that:  "'With all due respect and deference, I cannot confirm that Harris [Interactive] has the right to alter my remuneration in the fashion it intends. I continue to dispute your position that Harris [Interactive] has the right to unilaterally and materially change my title, compensation, reporting line and scope of duties without regard to the terms of my contract.  I shall pursue appropriate avenues to rectify this'" (Pl.'s St. of Mat. Facts ¶ 57, <u>citing</u> Ex. 5 at DEF000156 to Eisenberg Affirm.).

III. <u>Analysis</u>

    A.   <u>Summary Judgment Standards</u>

       The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  This form of relief is appropriate when, after discovery, the party -- here plaintiff -- against whom summary judgment is sought, has not shown that evidence of an essential element of her case -- one on which she has the burden of proof -- exists.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact.  An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).  Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial." <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993).  If the nonmovant fails to meet this burden, summary judgment will be granted against it.  <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.
2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54
(2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd.
P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

       "Material facts are those which 'might affect the
outcome of the suit under the governing law,' and a dispute is
'genuine' if 'the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.'"  Coppola v. Bear
Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy
v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007).
"'[I]n ruling on a motion for summary judgment, a judge must ask
himself not whether he thinks the evidence unmistakably favors
one side or the other but whether a fair-minded jury could return
a verdict for the [non-movant] on the evidence presented[.]'"
Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir.
2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295,
298 (2d Cir. 1996).

        The party seeking summary judgment has the burden to
        demonstrate that no genuine issue of material fact
        exists . . . . In determining whether a genuine issue
        of material fact exists, a court must examine the
        evidence in the light most favorable to, and draw all
        inferences in favor of, the non-movant . . . . Stated
        more succinctly, "[t]he evidence of the non-movant is
        to be believed."

Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002) (citations omitted); see also Jeffreys v. City of New York, supra, 426 F.3d at 553 ("'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'"), quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); accord Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Vann v. City of New York, 72 F.3d 1040, 1048 (2d Cir. 1995). "A defendant moving for summary judgment must prevail if the plain-tiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

The Court of Appeals for the Second Circuit has ex-plained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of

20

undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion."  <u>Vermont Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004); <u>see</u> <u>also</u> <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003).

Finally, "[w]hen considering cross-motions for summary judgment, a court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" <u>Make the Road by Walking, Inc. v. Turner</u>, <u>supra</u>, 378 F.3d at 142, <u>quoting</u> <u>Hotel Emp. & Rest. Emp. Union Local 100 of New York v. City of New York Dep't of Parks & Recreation</u>, 311 F.3d 534, 543 (2d Cir. 2002) (internal citations omitted).

B.   Plaintiff's Breach of Contract and
     Violation of New York Labor Law Claims[18]

1.   Applicable Legal Standards

a.   Breach of Contract[19]

The circumstances under which an at-will employee can

recover against his employer for breach of contract were suc-

cinctly set forth by the Honorable Judge Richard J. Sullivan,

United States District Judge, in Dreyfuss v. eTelecare Global

Solutions-US, Inc., 08 Civ. 1115 (RJS), 2010 WL 4058143 at *4

(S.D.N.Y. Sept. 30, 2010):

> Under New York law, "an employer has the right to
> terminate an at-will employee at any time for any
> reason or for no reason, except where that right has
> been limited by express agreement."  Sabety v. Sterling

---

[18]"Plaintiff's claim under New York Labor Law is dependent
upon the success of his breach of contract claims, as '[f]ailure
to establish a contractual right to wages necessarily precludes a
statutory claim under New York labor law.'"  Dreyfuss v.
eTelecare Global Solutions-US, Inc., 08 Civ. 1115 (RJS), 2010 WL
4058143 at *4 n.8 (S.D.N.Y. Sept. 30, 2010) (Sullivan, D.J.),
quoting Simas v. Merrill Corp., 02 Civ. 4400 (KTD), 2004 WL
213013 at *2 (S.D.N.Y. Feb. 4, 2004) (Duffy, D.J.).   Thus, I
shall analyze plaintiff's breach of contract and Labor Law claims
together.

[19]Both parties rely on New York law and do not claim that
the law of any other forum applies; "such 'implied consent . . .
is sufficient to establish choice of law.'"  Motorola Credit
Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004), quoting Krumme v.
WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000)
(internal quotations omitted).   Accordingly, New York law applies
to this matter.

Drug, Inc., 506 N.E.2d 919, 921 (N.Y. 1987).  The law is also clear, however, that an at-will employee can prevail on a breach of contract claim against his employer arising out of an employment agreement.  See e.g., Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000).  In other words, an employer may terminate an at-will employee, but he cannot retroactively change the terms of the employment agreement he entered into with that employee.  Rather, the employer is "entitled to change the terms of the employment agreement only prospectively, subject to [the employee's] right to leave the employment if the new terms [are] unacceptable." Gebhardt v. Time Warner Entm't-Advance/Newhouse, 726 N.Y.S.2d 534, 535 (App. Div. 2001).  As such, when an employer alters the terms of an employment agreement prospectively, the employee has the choice between leaving his job or staying and being "deemed to have agreed" to the new arrangement. Id.

See also Arakelian v. Omnicare, Inc., 735 F. Supp. 2d 22, 32-33 (S.D.N.Y. 2010) (Crotty, D.J.) ("Case law dictates that when parties have an employment contract terminable at will, the contract can be modified and different compensation rates fixed without approval of the other party since the dissatisfied party has a right to leave his employment.  If an employer [does this] and the employee chooses to remain in the employer's employ after being advised of that change, the employee is deemed to have acquiesced to the new terms of employment and cannot later claim compensation based on the terms of the original contract.") (internal quotations and citations omitted) (collecting cases); accord DuBois v. Macy's East Inc., 338 F. App'x 32, 33 (2d Cir.

2009) (same); <u>Shah v. Wilco Systems, Inc.</u>, 76 F. App'x 383, 385 (2d Cir. 2003) (same).

"An enforceable [at-will] employment agreement may take many forms -- including as a formal document, an employee hand-book, or even as an oral agreement." <u>Dreyfuss v. eTelecare Global Solutions-US, Inc.</u>, <u>supra</u>, 2010 WL 4058143 at *4 n.9 (collecting cases).

    b.  <u>New York Labor Law</u>

Judge Sullivan also succinctly set forth the standards applicable to a claim brought pursuant to New York Labor Law, N.Y. Labor Law §§ 190 <u>et</u> <u>seq.</u> in <u>Dreyfuss v. eTelecare Global Solutions-US, Inc.</u>, <u>supra</u>, 2010 WL 4058143 at *5 (emphasis in original omitted):

> New York Labor Law requires employers to pay . . . wages "in accordance with the agreed terms of employ-ment, but not less frequently than once each month and not later than the last day of the month following the month in which they are earned." N.Y. Lab. Law § 191(1)(c) (McKinney 2008). Wages are defined as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is deter-mined on a time, piece, commission or other basis," <u>Id.</u>, § 190 . . . .
>
>      *    *    *
>
> If an employer wrongfully withholds earned wages, an employee may sue to recover the wages, as well as (1) prejudgment interest; (2) reasonable attorney's fees; (3) costs of the suit; (4) liquidated damages of

25% of the withheld wages, if the employer willfully
withheld the wages.  N.Y. Lab. Law § 198(1-a); N.Y.
C.P.L.R. §  5001(a) (McKinney 2010).

2.   Application of the Foregoing
     Principles to the Present Case

     a.   Plaintiff's Breach and
          New York Labor Law Claims
          Based on Harris Interactive's
          Failure to Pay Plaintiff at
          the Original Contractual Rate
          for His Final Two Days of Work

Plaintiff contends that Harris Interactive "alter[ed]
the material terms and conditions of [his] employment" and, in
doing so, "breached its obligations pursuant to the contract it
drafted" (Pl.'s Mem. at 15-16).  With respect to plaintiff's
salary, he argues that "[t]he salary provision is clear[;] [t]he
only other provision in the contract concerning the salary is for
[it] to increase" (Pl.'s Mem. at 16).  Thus, plaintiff takes the
position that Harris Interactive should have paid him at the
original contractual rate for his final two days of work, i.e.,
March 15 and 16, 2010, and that because the company did not do
so, Harris Interactive breached their employment agreement and
violated New York Labor Law (see Pl.'s Mem. at 15-18, 23-24).

Harris Interactive contends that (1) because plaintiff
was an at-will employee, it "retained the right to change [the]

terms and conditions of employment going forward . . . . , " (2) "[p]laintiff was notified <u>well in advance</u> . . . that his salary [would] be changed [effective March 15, 2010]" and (3) "[p]laintiff elected to continue working on March 15 and for one day after, indication that . . . [he] acquiesced, for at least that period of time, to the reduction of his salary" (Memorandum of Law in Support of Defendant's Motion for Summary Judgment Pursuant to F.R.C.P. 56, dated Apr. 15, 2011 ("Def.'s Mem."), (Docket Item 20), 4-5) (emphasis in original).  Thus, Harris Interactive takes the position that plaintiff's at-will employment status precludes recovery of the unpaid portion of his salary for his final two days of work at the original contractual rate (<u>see</u> Def.'s Mem. at 5).

The April 27, 2009 offer letter clearly provides that plaintiff would be an at-will employee of Harris Interactive.  In pertinent part, the letter states:

> Your employment at Harris Interactive is "at will," which means that the employment relationship between you and the company may be terminated at any time, by either you or Harris Interactive, for any reason not expressly prohibited by law.

(Ex. B at DEF000002 to Def.'s St. of Mat. Facts).  Because plaintiff had an at-will employment agreement with Harris Interactive, either party had the right to (1) terminate the agreement at any time for any reason or (2) alter the agreement prospec-

tively, subject only to the other party's acceptance of the changed terms or termination of the agreement.[20]  See <u>Dreyfuss v. eTelecare Global Solutions-US, Inc.</u>, <u>supra</u>, 2010 WL 4058143 at *4; <u>Arakelian v. Omnicare, Inc.</u>, <u>supra</u>, 735 F. Supp. 2d at 32-33; <u>accord DuBois v. Macy's East Inc.</u>, <u>supra</u>, 338 F. App'x at 33; <u>Shah v. Wilco Systems, Inc.</u>, <u>supra</u>, 76 F. App'x at 385.  Put another way, because Harris Interactive had the right to terminate plaintiff's employment agreement altogether at any time and for any reason, it necessarily had the right to make less drastic changes to the agreement prospectively, such as decreasing plaintiff's wages or restructuring other parts of his compensation.

Here, plaintiff concedes that Harris Interactive began to change his job responsibilities as early as November 2009 (<u>see</u> Plaintiff's Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Rule 56.1 Statement of Additional Undisputed Material Facts, dated May 10, 2011 ("Pl.'s

---

[20]Plaintiff's argument that an employment agreement is nothing more than an "illusory fiction" if an employer can make unilateral changes to the terms of the agreement (<u>see</u> Pl.'s Mem. at 17) is without merit.  The mere fact that each side has the unilateral right to terminate or make prospective modifications to the contract does not render the contract a nullity.  Harris Interactive could not, for example, elect to pay plaintiff at a lower rate for services already provided, nor could plaintiff demand a higher rate for services already provided.

St. of Mat. Facts"), (Docket Item 25), ¶¶ 103-09).  By mid- to
late January 2010, plaintiff was assigned job responsibilities
that differed from what he had been initially hired to do, and
his supervisors acknowledged that he had taken on a changed role
at the company (see Pl.'s St. of Mat. Facts ¶¶ 111-15).  Plain-
tiff also concedes that on or about February 19, 2010, plaintiff
"received an e-mail from Till seeking to arrange a time to
discuss [his] changed job responsibilities and 'appropriate
compensation,' . . . . " (see Pl.'s St. of Mat. Facts ¶ 120).
This discussion took place during a conference call held on March
4, 2010 (see Pl.'s St. of Mat. Facts ¶ 122).  During this confer-
ence call, plaintiff was informed that he would no longer hold
the title of Senior Vice President of Global Accounts and Busi-
ness Development and that because his role at the company was now
one of an individual contributor/seller, his compensation would
be reduced, effective March 15, 2010, to $150,000.00 per year --
a salary commensurate with plaintiff's reduced responsibilities
(see Pl.'s St. of Mat. Facts ¶¶ 123-24).  Until March 15, 2010,
plaintiff would continue to be paid at the original contractual
rate of $220,000.00 per year.

     Once plaintiff received notice that the terms of his
employment were going to be changed prospectively -- as he did
during the March 4, 2010 conference call -- he could either have

accepted the changed terms, attempted to negotiate different terms with Harris Interactive or resigned his employment. Although the communications between plaintiff and Harris Interactive that took place between March 5 and plaintiff's last day at work -- March 16, 2010 -- clearly indicate plaintiff's dissatisfaction with the amended employment terms, there is no evidence that plaintiff successfully renegotiated the terms with Harris Interactive, and, by continuing to work past March 15, 2010, plaintiff, by his conduct, accepted the proposed modification of terms. See Dreyfuss v. eTelecare Global Solutions, Inc., supra, 2010 WL 4058143 at *4; Arakelian v. Omnicare, Inc., supra, 753 F. Supp. 2d at 32-33; Daimon v. Fridman, 5 A.D.3d 426, 428, 773 N.Y.S.2d 441, 442 (2d Dep't 2004); Liner Tech. Inc. v. Hayes, 213 A.D.2d 881, 882, 624 N.Y.S.2d 284, 285 (3rd Dep't 1995).

In short, because Harris Interactive had the right to propose a prospective modification of the employment contract unilaterally and because plaintiff impliedly agreed to the proposed modification by continuing to work on March 15 and 16, 2010, Harris Interactive is entitled to summary judgment dismissing plaintiff's claim to the extent that he asserts a breach of contract based on Harris Interactive's refusal to pay him at the rate of $220,000.00 per year for his work on March 15 and 16, 2010.

29

Additionally, Harris Interactive is entitled to summary judgment dismissing plaintiff's New York Labor Law claim based on Harris Interactive's refusal to pay him at the rate of $220,000.00 per year for his work on March 15 and 16, 2010.  As already explained in footnote 18, plaintiff must first establish a contractual right to wages in order to sustain a claim under New York Labor Law for withheld wages -- which he has not done here.  Accordingly, the Labor Law claim fails.  See Dreyfuss v. eTelecare Global Solutions-US, Inc., supra, 2010 WL 4058143 at *4 n.8; see also Simas v. Merrill Corp., 02 Civ. 4400 (KTD), 2004 WL 213013 at *2 (S.D.N.Y. Feb. 4, 2004) (Duffy, D.J.).

> b.   Plaintiff's Claim that
>      Harris Interactive Breached
>      the Implied Covenant of
>      Good Faith and Fair Dealing[21]

Plaintiff's claim that Harris Interactive also violated the implied covenant of good faith and fair dealing "by materi-ally altering the terms and conditions of [plaintiff's] employ-ment contract as agreed" also fails (see Pl.'s Mem. at 18-19).

---

[21]I note that plaintiff's claim with respect to Harris Interactive's putative breach of the implied covenant of good faith and dealing is not alleged nor mentioned in his complaint. It appears to have been raised for the first time in his motion papers.  In any event, as explained in the text, the claim is without merit.

"Under New York law, there is no obligation of good faith and fair dealing implied in at-will employment contracts, as doing so would be incompatible with the at-will nature of the relation-ship." Zaltz v. Wells Fargo Home Mortg., 08 Civ. 11225 (BSJ), 2010 WL 3026536 at *5 (S.D.N.Y. Aug. 2, 2010) (Jones, D.J.) (collecting cases); see also Fried v. LVI Services, Inc., 10 Civ. 9308 (JSR), 2011 WL 2119748 at *9 (S.D.N.Y. May 23, 2011) (Rakoff, D.J.); Pardy v. Gray, et al., 07 Civ. 6324 (LAP), 2008 WL 2756331 at *4 (S.D.N.Y. July 15, 2008) (Preska, D.J); Bessemer Trust Co., N.A. v. Branin, 498 F. Supp. 2d 632, 638 (S.D.N.Y. 2007) (Sprizzo, D.J.).

> c.   Plaintiff's Claim of
>      Breach Based on Harris
>      Interactive's Refusal to
>      Provide Severance Benefits
>      and Continued Healthcare Benefits

Plaintiff's final specification of breach of contract arises out of Harris Interactive's failure to provide him with certain severance benefits and medical insurance for the six-month period after he left Harris Interactive's employment. Specifically, plaintiff contends that (1) because Harris Interac-tive "fail[ed] to abide by [the] salary, title and other terms [as set forth in the employment agreement], [it] is obligated to comply with the contractual severance pay terms" (Pl.'s Mem. at

16) and (2) even putting aside Harris Interactive's breach of contract, plaintiff "was forced to leave [Harris Interactive because he was] constructively discharged as a matter of law" (Pl.'s Mem. at 19).  Plaintiff bases his claim of constructive discharge on the following allegedly intolerable working conditions:  (1) a reduction of his salary by approximately thirty percent, (2) diminished job responsibilities and a changed title and (3) onerous reporting obligations (see Pl.'s Mem. at 21-23).

Harris Interactive contends that plaintiff is not entitled to any severance benefits or medical insurance because plaintiff voluntarily resigned his employment (Def.'s Mem. at 5). Harris Interactive also contends that plaintiff's constructive discharge argument should be rejected because "the events surrounding [plaintiff's] departure establish as a matter of law that no constructive discharge occurred" (Def.'s Mem. at 5).

Plaintiff's at-will employment agreement provided in pertinent part:

> Should the Company terminate your employment for any reason other than for 'cause,' you will receive six months in severance payments and continued health benefits, or if continued coverage is unavailable, cash payments at the same level . . . , subject to your execution of the Company's customary confidentiality and non-compete agreements, and execution of a release in favor of the Company.

(Ex. B at DEF000002 to Def.'s St. of Mat. Facts). Because Harris Interactive did not actually terminate plaintiff's employment, resolution of whether plaintiff is entitled to severance benefits and medical insurance turns on whether he voluntarily resigned his employment or whether he was constructively discharged by Harris Interactive.

Although a claim of constructive discharge is routine in employment discrimination cases, it is less frequently seen in breach of contract cases. Nevertheless, those cases which have confronted an allegation of constructive discharge in the context of a breach of contract claim have applied the same standards that are applied in employment discrimination cases. See Berman v. Tyco Int'l Ltd., 08 Civ. 43 (DAB), 2011 WL 1334851 at *6 (S.D.N.Y. Mar. 31, 2011) (Batts, D.J.); Hertzoff v. Diaz, 533 F. Supp. 2d 470, 473 (S.D.N.Y. 2008) (McMahon, D.J.); Egan v. Marsh & McLennan Cos., 07 Civ. 7134 (SAS), 2008 WL 245511 at *6 (S.D.N.Y. Jan. 30, 2008) (Scheindlin, D.J.); Criscuolo v. Seagram & Sons, Inc., 02 Civ. 1302 (GEL), 2003 WL 22415753 at *8 (S.D.N.Y. Oct. 21, 2003) (Lynch, then D.J., now Cir. J.); Robinson v. Kingston Hosp., 55 A.D.3d 1121, 1123, 866 N.Y.S.2d 387, 388-89 (3rd Dep't 2008); Schaefer v. Brookdale Univ. Hosp. & Med. Ctr., 18 Misc. 3d 1142(A), 2008 WL 595881 at *8 (Sup. Ct. Kings. Co. Mar. 3, 2008). Accordingly, I shall apply the same standards

to plaintiff's constructive discharge claim that would apply if
plaintiff was asserting a discriminatory discharge in violation
of Title VII.

The standard for establishing constructive discharge
was outlined by the Court of Appeals for the Second Circuit in
Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003):

> An employee is constructively discharged when his
> employer, rather than discharging him directly, inten-
> tionally creates a work atmosphere so intolerable that
> he is forced to quit involuntarily.  Kirsch v. Fleet
> St., Ltd., 148 F.3d 149, 161 (2d Cir. 1998); Chertkova
> v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 89 (2d
> Cir. 1996).  We have explained that working conditions
> are intolerable when, viewed as a whole, they are "so
> difficult or unpleasant that a reasonable person in the
> employee's shoes would have felt compelled to resign."
> Chertkova, 92 F.3d at 89 (quotations omitted).

See also Petrosino v. Bell Atl., 385 F.3d 210, 229-30 (2d Cir.
2004); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62,
73 (2d Cir. 2000); Pena v. Brattleboro Retreat, 702 F.2d 322, 325
(2d Cir. 1983).  "The [constructive discharge] standard is a
'demanding one,' because 'a constructive discharge cannot be
proven merely by evidence that an employee . . . preferred not to
continue working for that employer or that the employee's working
conditions were difficult or unpleasant.'"  Gingold v. Bon
Secours Charity Health Sys., 768 F. Supp. 2d 537, 545 (S.D.N.Y.
2011) (Marrero, D.J.), quoting Miller v. Praxair, Inc., 408 F.
App'x 408, 410 (2d Cir. 2010) (internal quotations omitted).

"A constructive discharge is the most aggravated form of a hostile environment." Ferraro v. Kellwood Co., 03 Civ. 8492 (SAS), 2004 WL 2646619 at *11 (S.D.N.Y. Nov. 18, 2004) (Scheindlin, D.J.) (explaining that "[c]onstructive discharge is regarded as an aggravated case of hostile work environment"), aff'd, 440 F.3d 96 (2d Cir. 2006); see also Pennsylvania State Police v. Suders, 542 U.S. 129, 149 (2004); Chenette v. Kenneth Cole Prod., Inc., 345 F. App'x 615, 619 (2d Cir. 2009); Ortiz v. New York City Hous. Auth., No. 09-CV-1280 (SLT)(LB), 2011 WL 4711881 at *10 (E.D.N.Y. Sept. 30, 2011); Lugo v. Shinseki, 06 Civ. 13187 (LAK)(GWG), 2010 WL 1993065 at *11 (S.D.N.Y. May 19, 2010) (Gorenstein, M.J.) (Report and Recommendation); Divers v. Metro. Jewish Health Sys., No. 06-CV-6704 (RMM)(JMA), 2009 WL 103703 at *19 (E.D.N.Y. Jan. 14, 2009).

To state a hostile work environment claim, a plaintiff must allege that the defendant's behavior was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Kennebrew v. New York City Hous. Auth., 01 Civ. 1654 (JSR)(AJP), 2002 WL 265120 at *11 (S.D.N.Y. Feb. 26, 2002) (Peck, M.J.) (Report and Recommendation) (internal quotations and citations omitted).

> A hostile work environment claim requires a show-
> ing [1] that the harassment was "sufficiently severe or
> pervasive to alter the conditions of the victim's

35

employment and create an abusive working environment,"
and [2] that a specific basis exists for imputing the
objectionable conduct to the employer.  Perry v. Ethan
Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (internal
citations and quotation marks omitted).  The plaintiff
must show that the workplace was so severely permeated
with discriminatory intimidation, ridicule, and insult
that the terms and conditions of her employment were
thereby altered.  Leibovitz v. N.Y. City Transit Auth.,
252 F.3d 179, 188 (2d Cir. 2001) (citing Meritor Sav.
Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399,
91 L.Ed.2d 49 (1986)); Brennan v. Metro. Opera Ass'n,
Inc., 192 F.3d 310, 318 (2d Cir. 1999).  This test has
objective and subjective elements:  the misconduct
shown must be "severe or pervasive enough to create an
objectively hostile or abusive work environment," and
the victim must also subjectively perceive that envi-
ronment to be abusive.  Harris v. Forklift Sys., Inc.,
510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).
As a general rule, incidents must be more than "epi-
sodic; they must be sufficiently continuous and con-
certed in order to be deemed pervasive."  Perry, 115
F.3d at 149 (citation and internal quotation marks
omitted).  Isolated acts, unless very serious, do not
meet the threshold of severity or pervasiveness.
Brennan, 192 F.3d at 318; see also Faragher v. City of
Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141
L.Ed.2d 662 (1998) (noting that "[w]e have made it
clear that conduct must be extreme to amount to a
change in the terms and conditions of employment").
But it is well settled in this Circuit that even a
single act can meet the threshold if, by itself, it can
and does work a transformation of the plaintiff's
workplace.  See, e.g., Howley v. Town of Stratford, 217
F.3d 141, 154 (2d Cir. 2000) (vile and sexually ex-
plicit verbal abuse of a female firefighter that chal-
lenged her competence, was witnessed by a large group
that included her subordinates, and created a justified
fear that she would be left in peril at fire scenes);
Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d
426, 437 (2d Cir. 1999) (observing that a single sexual
assault may be sufficient to alter the terms and condi-
tions of the victim's employment).

36

> In short, a plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry, 115 F.3d at 149).  To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse.  Harris, 510 U.S. at 23, 114 S.Ct. 367 (relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"); see also Cruz, 202 F.3d at 570.

Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002) (brackets in original); see also Pennsylvania State Police v. Suders, supra, 542 U.S. at 133-34 (2004); Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001); Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007); Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 604-05 (2d Cir. 2006); Petrosino v. Bell Atlantic, supra, 385 F.3d at 221-22; Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004).

A hostile environment claim requires offensive conduct that is severe and pervasive; the offensive conduct need not, however, be intolerable or unendurable.

> While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the

37

> harassment is of such quality or quantity that a
> reasonable employee would find the conditions of
> her employment altered for the worse.'" (alter-
> ation and emphasis in the original).

> Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)
> (quoting Whidbee v. Garzarelli Food Specialties, Inc.,
> 223 F.3d 62, 70 (2d Cir. 2000)).  "The environment need
> not be 'unendurable' or 'intolerable.'"  Id.  In brief,
> "the fact that the law requires harassment to be severe
> or pervasive before it can be actionable does not mean
> that employers are free from liability in all but the
> most egregious cases."  Id. (quoting Whidbee, 223 F.3d
> at 70 (internal quotation marks omitted)).

Feingold v. New York, supra, 366 F.3d at 150.  In determining

whether the level of workplace misconduct constitutes an action-

able "hostile environment," no single factor is determinative;

rather, the court must consider the totality of the circum-

stances.  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88

(1998); Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001);

Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000); see

also Hayut v. State Univ. of New York, 352 F.3d 733, 746 (2d Cir.

2003) (hostile environment claims are "fact-specific and

circumstance-driven").

Judged by the foregoing standards, the changes in

plaintiff's terms and conditions of employment do not come close

to establishing a constructive discharge.  As set forth above,

Harris Interactive advised plaintiff in the March 4, 2010 confer-

ence call that his salary was being decreased from $220,000.00 to

$150,000.00 per year and that his duties and title were being

diminished.  To be sure, these events came as a blow to plaintiff and were, no doubt, extremely distasteful.  Nevertheless, at least in the absence of abusive, demeaning conduct, the notion that a white-collar job paying $150,000.00 is so abusive that continued employment is untenable is ludicrous on its face.  Some comparisons are helpful to put this figure in perspective. United States District Judges, United States Senators and Members of the House of Representatives are currently paid $174,000.00 per year.  See United States Courts, Judges and Judgeships, Judicial Compensation: Pay Charts and Table, http://www.uscourts.gov/JudgesAndJudgeships/JudicialCompensation/ PaychartsTables.aspx (last accessed Mar. 16, 2012).  United States Magistrate Judges are currently paid $160,080.00 per year. See 28 U.S.C. § 634(a).  An individual working 40 hours per week for 52 weeks per year at the current minimum wage ($7.25 per hour) would earn $15,080.00 per year.  See United States Dep't of Labor, Wages: Minimum Wage, http://www.dol.gov/dol/topic/wages/minimumwage.htm (last accessed Mar. 16, 2012).  All military personnel below two-star generals with 15 years of service earn less than $150,000.00 per year in base pay.  See United States Department of Defense, Military Compensation, http://militarypay.defense.gov/Pay/basicpay.html (last accessed Mar. 16, 2012).  In addition, according to the

2010 United States Census, only 20.5% of the households in the
United States enjoyed a gross income of $100,000 or more.   See
United States Census Bureau, Income Statistics,
http://www.census.gov/hhes/www/cpstables/032011/hhinc/toc.htm
(last accessed Mar. 16, 2012).

　　　　To be sure, fair compensation for a specific person is
necessarily an individualized matter, and the fact that a recent
high school graduate with no specialized skills might earn
$15,000.00 per year does not imply that $150,000.00 per year is
fair compensation for an individual with decades of experience in
marketing.  Plaintiff's service may well have been worth more
than $150,000.00 per year.  Nevertheless, the salaries set forth
herein do demonstrate that no reasonable jury could conclude that
a salary of $150,000.00 per year is so abusive that an employee
receiving that salary has no alternative to resignation.
"[C]onstructive discharge is not established through evidence
that [p]laintiff 'was dissatisfied with the nature of his assign-
ments,' that [p]laintiff 'feels that the quality of his work has
been unfairly criticized,' or that [p]laintiff's "working condi-
tions were difficult or unpleasant.'"  Nicholls v. Philips
Semiconductor Mfr., 760 F. Supp. 2d 407, 416-17 (S.D.N.Y. 2011)
(Karas, D.J.), quoting Stetson v. NYNEX Serv. Co., 995 F.2d 355,
360 (2d Cir. 1993); see also Kader v. Paper Software, Inc., 111

40

F.3d 337, 340 (2d Cir. 1997) (noting that time and reporting requirements that employee work only 9:00 a.m. to 5:00 p.m., sign in and out of the office, provide daily progress reports and attend weekly status meetings do not "seem [] onerous or humiliating").

Based on the above facts, plaintiff's contention that he was constructively discharged from his employment is without merit.  Accordingly, because plaintiff voluntarily resigned his employment, Harris Interactive is also entitled to summary judgment to the extent that plaintiff asserts a breach of contract claim based on Harris Interactive's failure to provide him with certain severance benefits and medical insurance for the six-month period following his employment.[22]

C.   Harris Interactive's Breach
     of Contract Counterclaim

Harris Interactive seeks summary judgment with respect to its breach of contract counterclaim for the return of plain-

---

[22]Although establishing a constructive discharge claim also requires that a plaintiff demonstrate that his employer "deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign," see Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993) (internal quotations and citations omitted), with the intention of forcing plaintiff to resign, I need not reach this issue because, as already discussed in the text, the working conditions cited by plaintiff do not come close to satisfying the objective element of the claim.

tiff's $15,000.00 signing bonus.[23]  Harris Interactive contends that the April 27, 2009 offer letter provided that the signing bonus was conditioned on plaintiff remaining with the company for one year, and because plaintiff voluntarily terminated his employment prior to one year, it is entitled to repayment of the bonus (see Def.'s Mem. at 22-23; see also Ex. B at DEF000002 to Def.'s St. Of Material Facts).

Plaintiff contends that he is entitled to summary judgment on Harris Interactive's counterclaim because he was constructively discharged from his employment, and, further, because the signing bonus was intended by the parties to make plaintiff "whole for the 401(k) compensation [that he] forfeited [when he] le[ft] his former employer [to work for Harris Interactive]" (see Pl.'s Reply Mem. 7-8 & n.4).

The April 27, 2009 offer letter provides, in pertinent part, that:

---

[23]Harris Interactive contends that plaintiff failed to respond to its motion for summary judgment on this claim, and, thus, that summary judgment should be summarily granted in Harris Interactive's favor (see Def.'s Reply Mem. at 12-13).  Plaintiff contends that he did address Harris Interactive's breach of contract counterclaim in his papers to the Court (see Pl.'s Reply Mem. at 7-8).  Harris Interactive's argument fails as a matter of law.  The law in this Circuit is clear that summary judgment cannot be summarily granted simply because the non-moving party defaults.  Vermont Teddy Bear Co. v. 1-800 Beargram Co., supra, 373 F.3d at 243-44.

> You will receive a sign-on bonus of $15,000; provided,
> however, if you voluntarily terminate your employment
> prior to the first anniversary date of your employment
> (or you are terminated for "cause" within such period),
> you will be required to repay to the company your sign-
> on bonus.

(Ex. B at DEF000002 to Def.'s St. of Mat. Facts).  As discussed
above, plaintiff was not discharged from his employment either
constructively or otherwise.  Instead, plaintiff voluntarily
resigned his employment on March 16, 2010, which was approxi-
mately ten months after he commenced work on or about May 20,
2009.  Thus, because plaintiff voluntarily terminated his employ-
ment with Harris Interactive prior to one year, he is contractu-
ally obligated to repay the $15,000.00 signing bonus.  Even if
the signing bonus was intended by plaintiff and Harris Interac-
tive to make plaintiff whole for a benefit that he had forfeited
by leaving his former employer, the plain language of the April
27, 2009 offer letter concerning plaintiff's entitlement to the
signing bonus and the conditions under which it would have to be
repaid are unambiguous.  See Liner Tech. Inc. v. Hayes, supra,
213 A.D.2d at 882, 624 N.Y.S.2d at 285 ("[W]here an express
provision in a written contract contradicts the claimed oral
representation, the conflict negates the claim of reliance upon
the latter[.]"), citing Bango v. Naughton, 184 A.D.2d 961, 962,
584 N.Y.S.2d 942, 944 (3d Dep't 1992).

Thus, on the basis of the above facts, Harris Interactive is also entitled to summary judgment on its breach of contract counterclaim.

IV. <u>Conclusion</u>

For all the foregoing reasons, Harris Interactive's motion for summary judgment dismissing plaintiff's claims and awarding Harris Interactive judgment on its counterclaim for $15,000.00 is granted in its entirety, and plaintiff's cross-motion for summary judgment in his favor is denied in its entirety. The Clerk of the Court is directed to enter judgment in favor of Harris Interactive in the amount of $15,000.00 with prejudgment interest from the date of April 15, 2010.[24]  The

---

[24]The April 27, 2009 offer letter does not specify the date upon which plaintiff would have had to repay the $15,000.00 signing bonus to Harris Interactive in the event that he either voluntarily terminated his employment or was terminated for cause prior to being with the company for one year (<u>see</u> Ex. B at DEF000002 to Def.'s St. of Mat. Facts).  Plaintiff would, therefore, have had to repay the $15,000.00 within a reasonable time -- which I find to be 30 days from the date of plaintiff's resignation.  Because prejudgment interest in a breach of contract case is awarded from the date of the breach, <u>see</u> <u>Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.</u>, 727 F. Supp. 2d 256, 295-96 (S.D.N.Y. 2010) (Leisure, D.J.) (collecting cases), I find that Harris Interactive is entitled to receive prejudgment interest on its counterclaim from the date of April 15, 2010 -- thirty days following plaintiff's resignation.

Clerk of the Court is further directed to mark as closed Docket

Items 13 and 22.

Dated:  New York, New York
        March 19, 2012

                              SO ORDERED


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Herbert Eisenberg, Esq.
Eisenberg & Schnell LLP
233 Broadway
New York, New York  10279

Scott D. Piper, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, New York  14534